IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES L. ROBINSON, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 1:19-CV-140-WHA-CSC ) |
| TERRY NELSON, et al., | ) ) |
|    Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff James Robinson, has filed, pro se, this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected constitutional rights. In his three-count complaint, Plaintiff asserts he was falsely arrested for property theft, falsely arrested for making a false report to law enforcement, and, in connection with the alleged false arrest for theft, Defendants conspired to charge Plaintiff with false reporting. Doc. 1. Plaintiff brings suit against Dothan City Defendants Terry Nelson, Jeb Howell, Andy Davis, and Jeff Arnold. *Id*. at 1.

Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 10, 12, 16, 18. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. Upon receipt of Defendants' special report, the Court issued an Order providing Plaintiff an opportunity to file a response. Doc. 20. The Order informed Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 2. The Order further cautioned Plaintiff that unless "sufficient legal cause" is shown within fifteen days of entry of this Order "why such action should not be undertaken, upon the expiration of the time for the plaintiff to file a response as allowed by this order, the court may at any time thereafter and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with law." *Id*. at 3. Plaintiff filed a response to Defendants' special report. Doc. 21. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment (Doc. 12) is due to be GRANTED.

I.  Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

When Defendants meet their evidentiary burden, as they have, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it    "); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this Court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate the Court disregard elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

II.     **Factual Background**

Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights in connection with two arrests. Doc. 1. Plaintiff alleges Defendant Nelson falsely arrested him for theft of property in the third degree from the Winn-Dixie grocery store in Dothan,

Alabama. Doc. 1 at 1-2. Plaintiff further alleges Defendant Howell wrongfully arrested Plaintiff for making a false theft report to law enforcement and Defendants Howell and Nelson conspired to charge Plaintiff with making a false report. *Id*. at 2-5. For relief, Plaintiff seeks monetary damages and injunctive and declaratory relief. *Id*. at 5.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

On June 3, 2018, an employee of grocery store, Winn-Dixie, located at 1151 Ross Clark Circle, noticed a large amount of crab legs was gone. Doc. 12-2.[1] Leanna Maloney, manager of Winn-Dixie, reviewed the store's video footage and noted "at approximately 4:30 p.m., a black man about 60 years old of age entered the store and put crab legs and beer in a shopping cart and exited the store without paying." *Id*. at 1; *see also* Doc. 12-15.[2] Ms. Maloney further testifies:

> About one hour later at 5:20 p.m., the same man entered the store again and put crab legs and beer in a shopping cart and exited the store without paying for the items.
>
> On June 4, 2018, the same man who had taken beer and crab legs the day before entered the store at approximately 5:15 p.m. and loaded a shopping cart with crab legs and beer and exited the store without paying for the items.
>
> Employees of Winn-Dixie are not allowed to follow people out the door involving theft cases, however this day I followed the man out of the store and asked him for his receipt. He did not produce the receipt and got into an older style Chevrolet pick-up truck displaying an Alabama tag number 38C37R3 and drove off. I was able to take a photograph of him in the truck and his license plate with my cell phone. [Doc. 12-9.]
>
> On June 5, 2018, at approximately 11:25 a.m., the same man entered the store and loaded a shopping cart with crab legs and beer and left the store without paying. The man got in the same truck I had photographed the day before and drove off. I called the police and made a report.

Doc. 12-2 at 1-2; *see also* Doc. 12-15. On June 5, Patrol Officer Robert Chavis and Corporal Michael Conner responded to Ms. Maloney's call at Winn-Dixie, who informed them of the theft. Doc. 12-1 at 1-2.[3] After speaking with Ms. Maloney, Officer Chavis checked the tag number Ms. Maloney provided and found that the tag was expired. *Id*. at 2. "A case number was issued[,] and a report

---

[1]    Doc. 12-2 is Winn-Dixie Manager Leanna Maloney's affidavit.

[2]    Doc. 12-15 is a DVD exhibit showing in-store video footage of a black male loading merchandise into a grocery cart at the Winn-Dixie grocery store on June 3 and June 4, 2018. The video footage depicts, twice on June 3 and once on June 4, the man loaded his grocery cart with merchandise and left the grocery store without paying.

[3]    Doc. 12-1 is Patrol Officer Robert Chavis' affidavit.

4

written so it could be turned over to the criminal investigation division of the Dothan Police Department." *Id*.

On June 6, Defendant Nelson was assigned to investigate the theft of property case that took place at the Winn-Dixie grocery store. Doc. 12-3 at 1.[4] Defendant Nelson testifies, on June 6:

> I went to the store and spoke to the store manager, Ms. Leanna Maloney. Ms. Maloney showed me in-store video footage of an unknown black male (later identified as [Plaintiff]), loading a shopping cart with crab legs and beer crossing the last point of sale and exiting the store without paying for the items. Ms. Maloney stated that on Sunday, June 3, 2018, [Plaintiff] entered the store at approximately 4:36 p.m. and loaded a shopping cart with beer and crab legs. He then exited the store without paying. At approximately 5:15 p.m., [Plaintiff] returned to the store, loaded a shopping cart with crab legs and beer and again exited the store without paying for the items.
>
> On June 4, 2018, at approximately 5:15 p.m., [Plaintiff] entered the store and loaded a cart with crab legs and beer and exited the store again without paying. Ms. Maloney followed [Plaintiff] out of the store and asked for the receipt in which he responded 'I don't have one.' [Plaintiff] then got in his truck and drove off. Ms. Maloney took a photo[] of the vehicle and the tag number with her cell phone. She provided a copy of the photograph[] to me. The tag vehicle was 38C37R3. The total value of the items stolen on the four occasions was $1,430.46, which made it a felony theft. I put out a 'Be on the Lookout' (BOLO) for the truck.
>
> On June 6, 2018, [Defendant Arnold] and [Defendant Davis] notified me they had the vehicle and [Plaintiff]. I went to the location and identified [Plaintiff] as the suspect along with the truck. I read [Plaintiff] his Miranda rights and he agreed to speak with me. I asked him about the theft from Winn Dixie and he denied involvement. [Plaintiff] was wearing the same clothes he had on in one of the videos. I looked in the bed of the trick and did not see any tool boxes or tools. I photographed [Plaintiff], the truck, and the tag. [Plaintiff] was transported to the Jail where he was charged with theft in the third degree under Ala. Cod §13A-8-4.1 (1975).

*Id*. at 1-3. Defendant Davis testifies, after Plaintiff's arrest, "[t]he truck was inventoried and the only thing of value in the truck were loose clothing and bags of clothing in the back of the truck." Doc. 12-7 at 2; *see also* Doc. 12-12. Pursuant to the "Dothan Police Department Vehicle Impound Tracking Form," the truck contained "misc. clothes and bags." Doc. 12-12.

After Plaintiff's arrest, Plaintiff's truck was turned over to Eagle Towing to be removed from the parking lot. Doc. 12-6 at 2.[5] On June 8, 2018, Patrol Officer Paul Cochrane responded to a report

---

[4] Doc. 12-3 is Defendant Terry Nelson's affidavit.

[5] Doc. 12-6 is Defendant Jeff Arnold's affidavit.

of an unlawful breaking and entering a vehicle at Eagle Towing. Doc. 12-4. Patrol Officer Cochrane testifies:

> When I arrived I met with [Plaintiff]. Plaintiff said he had been arrested on June 6, 2018 and his vehicle was towed to this location by Eagle Towing. [Plaintiff] stated he came to check on his vehicle and discovered two tool boxes and miscellaneous tools were missing from his truck along with a small tire compressor. [Plaintiff] stated the value of the items was approximately $320.00. I spoke with the owner of Eagle Towing, Mark Smith. Mr. Smith stated that he had spoken with the driver who towed the vehicle and he did not remember seeing any tools in the bed of the truck. I completed the report and the case was assigned to the criminal investigation division.

*Id*. at 1-2. On June 11, Defendant Howell was assigned to investigate the theft case "based upon [Plaintiff's] alleging two tool boxes, miscellaneous tools, and a tire compressor had been taken from his truck after it was towed following his arrest. . . ." Doc. 12-5 at 1;[6] *see also* Doc. 12-14. Defendant Howell testifies:

> On June 13, 2018, [Defendant Nelson] with the Dothan Police Department informed me he was present at the time of [Plaintiff's] arrest on June 6, 2018, and he did not see any toolboxes or tools in the bed of [Plaintiff's] truck. [Defendant Nelson] also informed me, [Defendant Arnold, Defendant Davis], and Sergeant Jason Weed were all present during [Plaintiff's] arrest and one of them may have a video from their body camera of the truck and its contents.
>
> I spoke to all three officers and they did not recall any tool boxes or tools in the back of [Plaintiff's] truck. I then reviewed [Defendant Arnold's] body cam video which showed no tool boxes or tools in the bed of the truck. ([Doc. 12-10], body cam video). Based upon my review of the body cam, and the conversations with the officers at the scene, I believed that [Plaintiff] had falsified his report to Officer Cochrane regarding the stolen tools. This was a misdemeanor charge that was not committed in my presence therefore, I went to Dothan Magistrate's office and obtained a warrant of [Plaintiff's] arrest for false reporting to law enforcement under Alabama Code §13-10-9 (1975). The warrant was executed on [Plaintiff] on July 24, 2018.

Doc. 12-5 at 1-2.

Additional facts are set forth as necessary.

### III.   Discussion

In ground one of Plaintiff's complaint, Plaintiff asserts, Defendant Nelson arrested Plaintiff and charged Plaintiff with third degree theft, "knowing that he had no evidence to prove that [Plaintiff] stole any items from Winn-Dixie to make a felony arrest." Doc. 1 at 1-2. Plaintiff further asserts, Defendant Nelson "had no video that proved [Plaintiff] left with property that valued the amount of 3rd

---

[6]   Doc. 12-5 is Defendant Jeb Howell's affidavit.

degree theft of property"; and Defendant Nelson "knowingly and intentionally arrested [Plaintiff] for 3rd degree [theft] because [Plaintiff] was [an] African American Male, and made an illegal arrest for a felony that couldn't have never [sic] taken place." *Id*. at 2.

In ground two, Plaintiff asserts, his vehicle was left in the custody and control of law enforcement including Defendants Nelson, Davis, and Arnold. *Id*. at 2-3. Plaintiff maintains, the items he reported as missing were in his truck prior to his arrest and therefore, he did not file a false police report. *Id*. at 3. Plaintiff contends, Defendants never performed a full inventory of his truck, there was no security at Eagle Towing, and because Plaintiff did not file a false report, Defendant Howell wrongfully arrested Plaintiff. *Id*. Plaintiff asserts Defendants collectively "knowingly, intentionally arrested [Plaintiff] for a charge to which [Plaintiff] did not commit." *Id*. at 3-4. Plaintiff argues his arrest was racially motivated. *Id*. at 4.

Last, in ground three, while difficult to discern, Plaintiff appears to argue Defendant Nelson intentionally heightened the damages to charge Plaintiff with third degree theft and Defendants Nelson and Howell conspired to charge Plaintiff for making a false report. *Id*. at 4.

Defendants argue, probable cause existed to arrest Plaintiff for the theft of property in the third degree and for filing a false report, Plaintiff's arrests were not racially motivated, and there was no conspiracy to wrongfully arrest Plaintiff. Doc. 10 at 1-2; *see also* Doc. 12 at 5-9. Defendants further assert they are entitled to qualified immunity. Docs. 10, 12.[7]

### A.    *Qualified Immunity*

Applicable to all three grounds of Plaintiff's complaint, is the doctrine of qualified immunity. In a recent opinion issued by the Eleventh Circuit, the Court explained:

> Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). When qualified immunity applies, it is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

---

[7]    While Plaintiff's complaint is not clear in which capacity he sues Defendants, to the extent he intended to sue Dothan City Defendants in their official capacities, Defendants are entitled to summary judgment. *See Smedley v. Tripp*, No. 1:09-CV-1061-MEF, 2010 WL 5600133, at *5 (M.D. Ala. Dec. 10, 2010), *report and recommendation adopted*, No. 1:09-CV-1061-MEF, 2011 WL 167063 (M.D. Ala. Jan. 19, 2011) (granting city employee defendant summary judgment because there are no Eleventh Amendment immunity issues preventing Plaintiff from suing the city).

The doctrine shields "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

"To receive qualified immunity, the officer must first show that he acted within his discretionary authority." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). It's undisputed here that [Defendants were] acting within [their] discretionary authority, so it falls to [Plaintiff] to "show that qualified immunity should not apply." *Id.* To do so, [Plaintiff] must allege facts establishing both (1) that [Defendants] violated a constitutional right and (2) that the relevant right was "clearly established" at the time of the alleged misconduct. *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). We can affirm a grant of qualified immunity by addressing either prong or both. *Pearson*, 555 U.S. at 236, 129 S.Ct. 808.

On the second prong, only decisions of the United States Supreme Court, this Court, or the highest court in a state can "clearly establish" the law. *Gates*, 884 F.3d at 1296. Because only clearly established law gives an officer "fair notice that her conduct was unlawful," *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), the Supreme Court has held that the contours of the constitutional right at issue "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right," *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quotation marks omitted).

Under this Court's precedent, a right can be clearly established in one of three ways. [Plaintiff] must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92. Although we have recognized that options two and three can suffice, the Supreme Court has warned us not to "define clearly established law at a high level of generality." *Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) (quotation marks omitted). For that reason, the second and third paths are rarely-trod ones. *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (collecting cases). And when a plaintiff relies on a "general rule[ ]" to show that the law is clearly established, it must "appl[y] with *obvious clarity* to the circumstances." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (quotation marks omitted; emphasis added); *see also Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) ("[I]f a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question.").

8

*Crocker v. Beatty*, 995 F.3d 1232, 1239-40 (11th Cir. 2021). With this standard in mind, the Court turns to Plaintiff's claims.

### B. Ground one

In ground one, Plaintiff asserts, Defendant Nelson violated his Fourth Amendment constitutional rights when he falsely arrested Plaintiff for the theft of property in the third degree. Defendant Nelson asserts he is entitled to qualified immunity and testifies he had probable cause to arrest Plaintiff for the theft of property at the Winn-Dixie grocery store.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "An arrest constitutes a 'seizure' within the meaning of the Fourth Amendment, and this Court 'assess[es] the reasonableness of an arrest by the presence of probable cause for the arrest.'" *Crocker*, 995 F.3d 1243 (quoting *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016)). Well-recognized in this Circuit is that "[t]he existence of probable cause bars a Fourth Amendment false-arrest claim." *Id*. (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990)).

By way of overview, "[a]n officer has probable cause when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id*. at 1243-244 (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995) (quotation marks omitted)). Further, "'[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'" *Id*. at 1244 (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). Last, "an officer's subjective intent doesn't matter for 'ordinary, probable-cause Fourth Amendment analysis.'" *Id*. (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

The facts demonstrate that on June 3, June 4, and June 5, 2018, a black male entered the Winn-Dixie grocery store in Dothan, Alabama, loaded a cart with merchandise, and left the store without paying for the goods. Docs. 12-2, 12-15. The facts demonstrate, Leanna Maloney, manager of Winn-Dixie, followed the man to his truck on June 4, asked for a receipt, and when the man stated he did not have a receipt, Ms. Maloney took a picture of the truck and the vehicle tags as the man drove away. Doc. 12-2. The facts show, on June 6, Defendant Nelson investigated the theft of property, spoke to Ms. Maloney, reviewed the in-store footage, determined the value of items stolen to be $1,430.46, and used the photo taken by Ms. Maloney to put out a "Be on the Lookout" for the truck. Doc. 12-3; *see*

*also* Doc. 12-13 at 1.[8] The facts further demonstrate, when Defendants Arnold and Davis notified Defendant Nelson that they located the suspect and vehicle, upon his arrival at the scene, Defendant Nelson (a) noted Plaintiff was wearing the same clothes as the man in one of the Winn-Dixie in-store videos; (b) identified Plaintiff as the man in the in-store footage; and (c) identified the truck as being the vehicle in Ms. Maloney's photo. Doc. 12-3. Last, the facts show Plaintiff was transported to jail where he was charged with theft in the third degree under Ala. Cod §13A-8-4.1 (1975).[9] *Id*.

At the time Defendant Nelson arrested Plaintiff, he had probable cause to arrest Plaintiff for the theft of property in the third degree. Viewing the record in a light most favorable to Plaintiff, the Court finds Plaintiff presents no evidence of a constitutional violation because Defendant Nelson had probable cause to arrest Plaintiff on June 6, 2018. *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity" and even seemingly "innocent activity" can be the basis for probable cause.). *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)) ("Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'"). Because probable cause existed when Defendant Nelson arrested and charged Plaintiff, the arrest did not run afoul of Plaintiff's constitutional rights.

In any event, even if Defendant Nelson lacked actual probable cause to arrest Plaintiff on June 6, 2018, he is entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). Arguable probable cause exists if a reasonable police officer, knowing what the defendant knew, would have believed there was probable cause for the arrest. *Id*. Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (internal quotations and citation omitted). On this record, Defendant Nelson had at least arguable probable cause to arrest Plaintiff for theft of property in the third degree. For the foregoing reasons, summary judgment is due to be granted in favor of Defendants on Plaintiff's first ground for relief.

---

[8]   Doc. 12-13 is the June 5, 2018, "Alabama Uniform Incident/Offense Report." Pursuant to the report, the property stolen from Winn-Dixie included $283.16 in beer and $1147.30 in snow crab legs. *See id*.

[9]   Alabama Code Section 13 A-8-4.1 (1975) defines theft 3d as:

> (a) The theft of property that exceeds five-hundred dollars ($500.00) in value but does not exceed one thousand four hundred and ninety-nine dollars ($1,499.00) in value, and which is not taken from the person of another, constituted theft of property in the third degree.
>
> (b) Theft of property in the third degree is a class D felony.

    **C.**    **Ground two**[10]

In ground two, Plaintiff challenges his arrest for false reporting to law enforcement under Alabama Code §13A-10-9 (1975).[11] Defendant Howell asserts the defense of qualified immunity and testifies he had probable cause to arrest Plaintiff for making a false report to law enforcement. Doc. 12-5.

The facts demonstrate, on June 6, 2018, following Plaintiff's arrest, Plaintiff's truck was inventoried and the only thing of value in the truck, as stated in the impound tracking form, were loose clothing and bags of clothing in the back of the truck. Doc. 12-7 at 2; *see also* Doc. 12-12. The facts demonstrate, on June 8, after Officer Cochrane found Plaintiff trying to enter his truck, Plaintiff stated that he was missing toolboxes, tools, and a small tire compressor, for a total loss of approximately $320. Doc. 12-4. The facts show, Defendant Howell investigated Plaintiff's case and on June 13, Defendant Nelson told Defendant Howell at the time of Plaintiff's arrest, he did not see any toolboxes or tools in the bed of Plaintiff's truck. Doc. 12-5. The facts demonstrate, Defendant Howell spoke to all officers present at the scene of Plaintiff's arrest and none of the officers recalled seeing any toolboxes or tools in Plaintiff's truck. *Id.* The facts further demonstrate, Defendant Howell's review of Defendant Arnold's bodycam video, showed neither toolboxes nor tools. *Id.*; *see also* Doc. 12-10. Finally, the facts show, based upon Defendant Howell's review of the body cam and his conversations with the officers at the scene of Plaintiff's arrest, Defendant Howell believed Plaintiff falsified his report and therefore, obtained a warrant for Plaintiff's arrest. Doc. 12-5.

At the time Defendant Howell arrested Plaintiff, he had probable cause to arrest Plaintiff for making a false report to law enforcement. Viewing the record in a light most favorable to Plaintiff, the Court finds Plaintiff presents no evidence of a constitutional violation because Defendant Howell had probable cause to arrest him on July 24, 2018. *Illinois*, 462 U.S. at 243 n. 13; *Ortega,* 85 F.3d at 1525. Because probable cause existed when Defendant Howell obtained a warrant and arrested Plaintiff, the arrest did not run afoul of Plaintiff's constitutional rights.

---

[10]    Because Plaintiff's ground two again asserts a claim of false arrest in violation of the Fourth Amendment, the Court herein adopts and incorporates the legal standard set forth in "Section B."

[11]    Pursuant to Alabama Code §13A-10-9:

> (a) A person commits the crime of false reporting to law enforcement authorities if he knowingly makes a false report or cause the transmission of a false report to law enforcement authorities of a crime or relating to a crime.
>
> (b) False reporting to law enforcement authorities is a Class A misdemeanor.

In any event, even if Defendant Howell lacked actual probable cause to obtain a warrant and arrest Plaintiff on July 24, 2018, he is entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones*, 174 F.3d at 1283. As explained, arguable probable cause exists if a reasonable police officer, knowing what the defendant knew, would have believed there was probable cause for the arrest. *Id*. Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Holmes*, 321 F.3d at 1079 (internal quotations and citation omitted). On this record, Defendant Howell had at least arguable probable cause to arrest Plaintiff for making a false report to law enforcement. For the foregoing reasons, summary judgment is due to be granted in favor of Defendants on Plaintiff's second ground for relief.

**D.     Ground three**

Plaintiff's claims in ground three are inextricably tied to his claims in grounds one and two. First, insofar as Plaintiff asserts Defendant Nelson falsely arrested him in connection with the theft of property, for the reasons set forth *supra*, in "Section B," Defendants are due to be granted summary judgment on this allegation.

Second, the Court has carefully reviewed Plaintiff's allegations of conspiracy and finds they allege no facts suggestive of conspiracy.

To establish a § 1983 conspiracy, "a plaintiff must show among other things, that the defendants reached an understanding to violate [his] rights." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir.2002) (internal quotation marks and citation omitted) (brackets in original). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality. . . [T]hey must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The Court has carefully reviewed Plaintiff's claim of conspiracy. Plaintiff's assertions are self-serving, purely conclusory allegations that not only fail to assert those material facts necessary to establish a conspiracy, but also allege no facts suggesting a conspiracy or an agreement other than seemingly contending Defendants had a common goal, scheme, or purpose to violate Plaintiff's constitutional rights. Merely stating Defendants Nelson and Howell concocted a "full plan scheme," to have Plaintiff arrested for making a false report to law enforcement is insufficient to state a conspiracy claim. *See* Doc. 1 at 4. In consonance, Plaintiff's allegations fail to allow the Court to draw the conclusion that a conspiracy claim is plausible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and may

12

be dismissed). Defendants are due to be granted summary judgment on Plaintiff's third ground for relief.

### E.     State law claims

Last, insofar as Plaintiff asserts any state-law false-arrest claims against Defendants, "[u]nder Alabama law, '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (quoting *Ex parte Hayles,* 852 So.2d 117, 122 (Ala. 2002)). "In *Ex parte Cranman,* 792 So.2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise." *Id*. at 740-41 (citing *Ex parte Cranman*, 792 So. at 405) (footnote omitted). In Alabama, "[t]here is also statutory, discretionary-function immunity. . . ." *Id*. at 741. "Specifically, § 6–5–338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties." *Id*. (citing Ala. Code § 6–5–338(a) (1994) ( "Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.").

The Eleventh Circuit has also recognized:

> *Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6–5–338(a). *Ex parte City of Tuskegee,* 932 So.2d 895, 904 (Ala. 2005) ('The restatement of State-agent immunity as set out in *Cranman,* 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6–5–338(a).'). So for our purposes, the question of whether City police officers Defendants…receive immunity for Plaintiffs' state-law claims depends on application of *Cranman*'s state-agent immunity test.
>
> The Alabama Supreme Court established a burden-shifting framework for application of the state-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds,* 946 So.2d 450, 452 (Ala. 2006). 'If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.' *Id.*

*Brown*, 608 F.3d at 741.

Turning to the claims against Defendants, there is no dispute that Defendants were acting within the scope of their discretionary functions as law enforcement officers. Plaintiff, therefore, bears the burden to show Defendants acted willfully, maliciously, fraudulently, in bad faith, beyond their legal authority, or under a mistaken interpretation of the law. *See Brown*, 608 F. 3d at 741.

Plaintiff fails to meet his burden. "The Alabama Supreme Court has applied the same 'arguable probable cause' standard utilized in this Court's federal qualified immunity cases for determining whether a city police officer receives state-agent immunity for his role in an arrest." *Id*. (quoting *Borders v. City of Huntsville,* 875 So.2d 1168, 1180 (Ala. 2003) ("If ... a jury question exists as to whether [the officer] acted with arguable probable cause, [then] the summary judgment [to the officer] must be reversed."). As held above, Defendants are entitled to qualified immunity for their conduct in arresting Plaintiff because the facts, construed in the light most favorable to Plaintiff, demonstrate, they had arguable probable cause to arrest Plaintiff for theft of property and for filing a false report to law enforcement. Because Defendants had probable cause to arrest Plaintiff, Plaintiff's Alabama false-arrest claims – like his Fourth Amendment claims – fail and Defendants are due to be granted summary judgment.[12]

### IV. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by Defendants (Doc. 12), be GRANTED.
2. Judgment be ENTERED in favor of Defendants.
3. This case be DISMISSED with prejudice.

On or before **January 26, 2022**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal

---

[12] Defendants also receive both state-agent and statutory, discretionary-function immunity under § 6–5–338(a) from Plaintiff's false arrest claims for the same reasons. *See Brown*, 608 F.3d at 741-42.

conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of January 2022.

/s/ CHARLES S. COODY
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE